IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**NICOLETTE PAGE**, an individual,

               Plaintiff,                      No. 6:24-cv-16-MC

              v.                      **OPINION AND ORDER**

**WALGREEN CO. dba WALGREENS**, a
foreign corporation,

               Defendant.

_____

**MCSHANE, Judge**:

      Plaintiff Nicolette Page brings this diversity action against Defendant Walgreens.

Plaintiff brings state claims for Discrimination on Account of Race, False Arrest, and Negligent

Training. Walgreens moves to dismiss Plaintiff's False Arrest and Negligent Training claims

(but does not move against the racial discrimination claim). For the reasons discussed below,

Defendant's Motion to Dismiss (ECF No. 16) is GRANTED in part.

## BACKGROUND[1]

     In October 2023, Plaintiff shopped at a Walgreens in Keizer, Oregon. First Am. Compl.

("FAC") ¶ 5. Plaintiff is a 34-year-old woman of African-American and Pacific Islander descent.

FAC ¶ 3. Plaintiff is 5'3" tall and weighs 180 pounds. FAC ¶ 19. Plaintiff was accompanied by

her daughter and a family friend's daughter. FAC ¶ 5. The family friend's daughter is a 16-year-

---

[1] At the motion to dismiss stage, this Court takes all of Plaintiff's allegations as true. *See Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000).

old Caucasian girl who is 4'10" tall and weighs 110 pounds. FAC ¶ 19. The three entered the store's restroom at the same time. FAC ¶ 6. Without Plaintiff's knowledge, the family friend's daughter had stolen a pregnancy test kit. FAC ¶ 7.

The following day, Plaintiff returned to the store. FAC ¶ 8. The store's night manager approached Plaintiff "by coming within inches of her and aggressively telling her 'I'm going to have to ask you to leave.'" FAC ¶ 8. Plaintiff was shocked and responded by saying "What!? Why!?" FAC ¶ 8. The manager stated, "We have you on camera stealing from the store." FAC ¶ 9. Plaintiff denied stealing anything and the manager stated, "We have you on video" and accused Plaintiff of stealing a pregnancy test kit. FAC ¶ 12. After some back and forth, the manager "reiterated his demand that [Plaintiff] leave the store and threatened her with physical force, stating in an elevated voice "You are not going to be getting anything here. You need to leave now or I will help you to leave." FAC ¶ 15. Fearing for her physical safety, Plaintiff left the store. FAC ¶ 16.

The day after being ordered to leave the store, Plaintiff called and left a message for the store's general manager "stating in no uncertain terms that she had not stolen anything and that she had been humiliated by being falsely accused of theft and forced to leave the store." FAC ¶ 17. The general manager called Plaintiff the following day to apologize "and explained that she had reviewed the video recording and that it was clear that [Plaintiff] had not stolen anything, but that her family friend's daughter had." FAC ¶ 18. The general manager commented that this "is not how our employees are trained" and explained the night manager "needed more training." FAC ¶ 21.

As noted above, Plaintiff filed this diversity action bringing state claims for racial discrimination in violation of ORS 659A.403, False Arrest, and Negligent Training. Defendant moves to dismiss only the claims for False Arrest and Negligent Training.

## STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burgert v. Lokelani Bernice Pauahi Bishop Tr.*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

1. **FALSE ARREST**

Twenty years ago, Judge Mosman provided a concise summary of false arrest in Oregon:

> To state a claim for false imprisonment, a plaintiff must show the defendant caused an unlawful confinement of plaintiff. *See Roberts v. Coleman*, 228 Or. 286, 292–93, 365 P.2d 79 (1961); *Walker v. City of Portland*, 71 Or. App. 693, 697, 693 P.2d 1349 (1985). The threshold element of confinement may be satisfied by establishing that the defendant did at least one of four things: (1) put up actual or apparent physical barriers to prevent plaintiff's exit, (2) used physical force to

prevent exit, (3) used threats of force to prevent exit, or (4) asserted legal authority to prevent exit. *See Roberts*, 228 Or. at 294, 365 P.2d 79; *Buckel v. Nunn*, 133 Or. App. 399, 405, 891 P.2d 16 (1995). As long as one of these four methods of showing confinement is met, the confinement "need not be for more than a brief time." *Buckel*, 133 Or. App. at 405, 891 P.2d 16 (citing *Lukas v. J.C. Penney Co.*, 233 Or. 345, 378 P.2d 717 (1963)).

*Campbell v. Safeway, Inc.*, 332 F. Supp. 2d 1367, 1373 (D. Or. 2004).

The parties agree that Oregon courts turn to the Restatement of Torts when analyzing claims of false arrest. Def's Mot. 4–5, ECF No. 16; Pl.'s Opp. 3, ECF No. 20. Although the specific factual allegations confirm that the night manager merely prevented Plaintiff from shopping in the store and actually encouraged Plaintiff to exit—as opposed to using force or threats to prevent Plaintiff from exiting[2]—Plaintiff argues:

> Defendant is correct that the Oregon courts look to the Restatement of Torts when analyzing a claim of false arrest. However, Defendant fails to provide this Court with a complete version of the Restatement's explanation of the "confinement" element. Under Section 36, confinement must be "complete," within "*the boundaries fixed by the [defendant]*[.]" RESTATEMENT (SECOND) OF TORTS, § 36 (emphasis added). This does not mean that a Plaintiff may only be subject to false arrest if handcuffed or locked in a room. Rather, the defendant establishes the extent of the confinement that must be "complete." The Restatement commentary further explains that if the defendant uses "threats of force" or by "exerting legal authority" to compel a plaintiff "to accompany him from place to place." RESTATEMENT (SECOND) OF TORTS, § 36, comment c. In those circumstances, the defendant has effectively confined the plaintiff "*as though he had locker [her] in a room.*" *Id.* (emphasis added).

Pl.'s Opp. 3–4 (emphasis in original).

Although Plaintiff presents cases from several other states providing alleged support for her novel theory of false arrest under these alleged facts, the lone Oregon cases she provides, *Christ v. McDonald*, 152 Or. 494 (1935) and *Lukas v. J.C. Penney Co.*, 233 Or. 345 (1963), are in no way analogous to the facts alleged here. In *Christ*, police officers investigating a grocery store

---

[2] The Court does not mean to imply that this interaction was not distressful and humiliating to Plaintiff. Instead, the Court simply looks to the FAC to view the facts of the encounter, distinct from any emotional impact Plaintiff may have suffered from the event.

robbery arrested a suspect and brought him to the police department for questioning. 152 Or. at 498–99. The officers refused Christ's request to go to a place where others could identify him. "One of the defendants got into plaintiff's car *and compelled him to drive to the police station*. Defendants required plaintiff, *against his will*, to be searched, and they searched plaintiff's car. After they arrived at the station . . . *Plaintiff was taken into a room* where he was subjected to numerous indignities *and was kept detained there until after 11 o'clock p.m*. While there, *and against his will*, they took his fingerprints, and at no time was plaintiff informed why he was there. *Id*. (emphasis added). These facts bear no relationship to what Plaintiff alleges happened here; i.e., where the manager "reiterated his demand that [Plaintiff] leave the store and threatened her with physical force, stating in an elevated voice 'you are not going to be getting anything here. You need to leave now or I will help you to leave.'" FAC ¶ 15.

And while being closer—in a relative sense—to the facts alleged here, the facts in *Lukas* are so dissimilar as to be essentially no support for Plaintiff's argument that being asked to leave (and correspondingly being prevented from shopping in) a store constitutes a false arrest. There, a woman and her granddaughter left a department store and a manager, thinking they stole a dress, ran up to them on the street outside the store. *Lukas*, 233 Or. at 349. The manager grabbed the shopping bag held by the granddaughter and "kept pulling at the bag" while yelling at the women who refused to let him look inside the bag. *Id*. The mother "took ahold of the shopping bag to keep him from jerking it away from" her granddaughter. *Id*. As the manager yelled louder and a crowd gathered, and as her daughter started to cry, the grandmother "said to him, I said, 'if you want to see in this shopping bag,' I said 'there is no white dress in there and no dress of any kind,' but I said, 'I will let you see into it,' because I was getting scared." *Id*. at 349–50. The court concluded that even though the plaintiff was, in some sense, free to leave and not

"confined" in the usual sense, the fact that the woman could only leave by abandoning her bag and her granddaughter meant the manager restrained the woman's freedom of movement sufficiently for the woman to be confined in the context of a claim for false imprisonment:

> Through the display of physical force [the manager] made the two [women] apprehensive of injury. The plaintiff was confronted with the choice of standing her ground, or surrendering her granddaughter and her shopping bag to [the manager]. Only by abandoning her granddaughter and shopping bag would she be free to go her way. To stand her ground was therefore to abandon her freedom of movement.

*Id.* at 352.

In quoting various treatises, the court noted such restraint, even in the form of the plaintiff standing her ground, was sufficient to constitute false imprisonment:

> False imprisonment is the imposition of unlawful restraint upon another's freedom of movement. The restraint need not be for more than a brief time. Restatement of the Law, Torts, § 35.

> Section 40 of that treatise states:

>> 'Under the rule stated in § 35, the confinement may be by submission to a threat to apply physical force to the other's person or to the person of a member of the other's immediate family immediately upon the other's going or attempting to go beyond the area in which the actor intends to confine him.'

> The following is taken from 22 Am. Jur., False Imprisonment, § 13, Page 361:

>> 'The use of force is not necessary to constitute false imprisonment. Any genuine restraint constitutes an actionable imprisonment although effected without actual contact with the person. The essential thing is the restraint of the person. This may be caused by threats, as well as by actual force; and the threats may be by conduct or by words. If the words or conduct are such as to induce a reasonable apprehension of force and the means of coercion are at hand, a person may be as effectually restrained and deprived of liberty, as by prison bars.'

> We quote the following from 35 C.J.S. False Imprisonment § 11, page 635:

>> 'The restraint constituting a false imprisonment may arise out of words, acts, gestures, or the like which induce a reasonable

> apprehension that force will be used if plaintiff does not submit, or it is sufficient if they operate on the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries, and a false imprisonment may be accomplished by threats of injury to person, property, or reputation.

*Lukas*, 233 Or. at 353–54.

Given the above, the court concluded, "We believe that the combination of anger, threats, force, fear and struggle for the shopping bag, all developing suddenly upon the public sidewalk in a public spectacle and involving a grandmother and her granddaughter, were capable of supporting a finding that the defendant restrained the movements of the plaintiff." *Id.* at 354.

If Defendant here physically escorted Plaintiff to a back room and subjected her to a lengthy search and interrogation, *Christ* may be applicable. And if the night manager allowed Plaintiff to leave while physically restraining Plaintiff's daughter or Plaintiff's purse, *Lukas* may be instructive. But that is simply not what Plaintiff alleges happened here. In fact, Plaintiff's allegations consist of essentially the opposite of false imprisonment; i.e., that Plaintiff was not allowed to shop and was instead asked to leave the premises. The Court agrees with Defendant:

> Plaintiff argues that [Defendant] ignores and/or misreads Oregon law regarding false arrest. But it is Plaintiff who ignores the law and gives a misleading spin to authorities she contends support her claim. If Plaintiff's view of the law was correct, it would transform any request that a person leave a premises, even when trespassing, into an unlawful "imprisonment" of that person. Plaintiff's position is counterintuitive, novel, and extreme. Contrary to her assertions, it is also unsupported by any authority.

Repl. 2, ECF No. 21.

The Restatement—which Plaintiff generally overlooks other than when cherry-picking certain phrases that may at first glance appear to support her position—confirms that permitting another to freely go essentially anywhere other than one specific, limited location does not constitute false arrest in Oregon. Section 36 of the *Restatement (Second) of Torts*, titled "What Constitutes Confinement," provides:

7 – OPINION AND ORDER

      (1) To make the actor liable for false imprisonment, the other's confinement within the boundaries fixed by the actor *must be complete*.

      (2) The confinement is complete although there is a reasonable means of escape, *unless the other knows of it*.

      (3) The actor *does not become liable for false imprisonment by intentionally preventing another from going in a particular direction* in which he has a right or privilege to go.

§ 36 (emphasis added).

And if the plain language left any doubt (it does not), the comments quickly remove such doubt. Comment (a), *Means of escape*, provides: "If the actor knows of an avenue of escape, he cannot intend to imprison the other by closing all the other exits unless he believes that the other is unaware of the available avenue of escape." Here, Plaintiff was clearly aware of the "available avenue of escape" as she had just entered the store through the doors that she would soon choose to freely walk out through. Plaintiff's confinement was in no way "complete." Rather, the night manager merely prevented Plaintiff from continuing in a particular direction that Plaintiff wanted to go. Even if the night manager had no good (i.e., lawful) reason to restrict Plaintiff, such a limited restriction does not rise to a false arrest. Illustration 8 in the Restatement is instructive: "A wrongfully prevents B from entering the United States. A has not confined B, although B, in a sense, may be said to be confined within the rest of the habitable world." Plaintiff's specific factual allegations confirm that her claim for false arrest suffers from multiple, fatal deficiencies. Because leave to amend would be futile, that claim is DISMISSED, with prejudice.

## 2.  **NEGLIGENT TRAINING**

In Oregon, foreseeability is critical when analyzing liability resulting from negligent conduct. In this sense, "'liability' is confined to harms actually resulting that are of the general kind to be anticipated from the conduct and, for the same reason, liability is confined to situations in which the person harmed is one of the general class threatened." *Stewart v. Jefferson Plywood Co.*, 255 Or. 603, 608–09 (1970). As explained by the Supreme Court of Oregon:

> This idea of limiting liability to that which can be anticipated is formulated into the foreseeability test for negligence, which states that one is negligent only if he, as an ordinary reasonable person, ought reasonably to foresee that he will expose another to an unreasonable risk of harm. Foreseeability is an element of fault; the community deems a person to be at fault only when the injury caused by him is one which could have been anticipated because there was a reasonable likelihood that it could happen.

*Id.* at 609.

The FAC, in addition to the specific factual allegations mentioned above, alleges that "Defendant negligently failed to adequately train its night manager in identifying and handling suspected shoplifters." FAC ¶ 31. Plaintiff alleges the night manager stated "We have you on camera stealing from the store" and later reiterated "We have you on video." FAC ¶¶ 10, 12. Plaintiff also alleges the night manager's supervisor called Plaintiff after the incident "and explained that she had reviewed the video *and that it was clear that [Plaintiff] had not stolen anything*, but that her family friend's daughter had." FAC ¶ 18 (emphasis added). The FAC makes it abundantly clear that due to significant, unmistakable differences in appearance, it would be impossible for any person to reasonably confuse Plaintiff with her family friend's daughter. Additionally, the general manager stated this "is not how our employees are trained" and clarified that the night manager "needed more training." FAC ¶ 21.

Although Defendant argues these allegations do not demonstrate it "had reason to know of any dangerous propensity of the night shift manager prior to his making an allegedly false accusation of theft against Plaintiff," the Court does not read cases analyzing negligent training in Oregon to require such prior knowledge beyond the general requirement that the harm allegedly incurred was "of the general kind to be anticipated from the conduct and . . . liability is confined to situations in which the person harmed is one of the general class threatened." *Stewart*, 255 Or. 208–09. In short, Plaintiff has provided specific factual allegations, beyond mere legal conclusions, indicating Defendant failed to adequately train the night manager in

identifying and handling suspected shoplifters and that the specific harm that occurred here was foreseeable; i.e., the night manager falsely accused Plaintiff of shoplifting.

Defendant also argues that because its alleged negligence did not result in any physical impact or physical injuries, Plaintiff is precluded from recovering for her alleged injuries; here, solely emotional damages. The parties, and the Court, agree that in Oregon, "a plaintiff who has suffered emotional distress as a result of a defendant's negligence ordinarily may not recover damages for such emotional harm in the absence of some sort of physical impact." *I.K. v. Banana Republic, LLC*, 317 Or. App. 249, 254 (2022). An exception to that general rule applies "when the defendant violated a 'legally protected interest' independent of the plaintiff's interest in being free from negligent conduct." *Id.* Again, the parties agree that:

> The analysis of a claim for negligent infliction of emotional distress thus proceeds in three steps: First, we must determine whether the complaint alleges the violation of a legally protected interest. Second, we must determine whether such interest is of sufficient importance as a matter of public policy to merit protection from emotional impact. And third, we must determine whether the complaint alleges that the emotional distress was the foreseeable result of the violation of the legally protected privacy interest.

*Id.* at 255.

The parties disagree, however, on whether the facts as alleged meet the heightened standard required for Plaintiff to slip through the exception to the physical impact rule. Plaintiff argues that she was subject to false arrest, and this constitutes a legally protected interest with sufficient public policy importance to meet the exception. As explained above, however, Plaintiff was not subjected to a false arrest. In the alternative, Plaintiff argues she was defamed, and the humiliation from being defamed in such a public fashion justifies recovery for emotional damages. However, as noted by Defendant, Plaintiff does not state a claim for defamation. In response, Plaintiff argues that she "intends to amend her complaint to add a claim for Defamation. Rather than further delay resolution of the issues raised by Defendant's instant

motion, and to permit a complete analysis of that claim, Plaintiff will do so at a later stage of the proceedings." Resp. fn 4. This Court, however, deals with active cases and controversies (and not hypothetical future claims).

Neither party mentions Plaintiff's claim for discrimination on account of race in violation of ORS 659A.403. Defendant did not move to dismiss that claim. As a result, the Court views the allegations, as it must at this stage, under the theory that Defendant provided negligent training to its night manager and, as a result, the night manager denied Plaintiff full and equal privileges afforded to other shoppers solely on account of Plaintiff's race. The Court understands Defendant's strong belief that "Plaintiff's allegations are riddled with inaccuracies and material omissions." Def.'s Mot. fn 1. And Defendant will be afforded ample opportunity to demonstrate that, for example, whatever happened in the store that day was in no way based on Plaintiff's race. But based solely on the allegations in the FAC, Plaintiff has sufficiently alleged the violation of a legally protected interest of sufficient public importance that led to foreseeable emotional damages. At this stage, that is enough.

## <u>CONCLUSION</u>

For the above reasons, Defendant's Motion to Dismiss, ECF No. 16, is GRANTED in part. Plaintiff's False Arrest claim is DISMISSED, with prejudice. Finally, this case deals with claims under Oregon law. In future briefings, Plaintiff is directed to point to Oregon caselaw or, if pointing to caselaw from other jurisdictions, to alert the Court to the relevance of that law. IT IS SO ORDERED.

DATED this 31st day of July, 2024.

_____/s/ Michael McShane_____
**Michael J. McShane**
**United States District Judge**